Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

Civil Division

## 19 CV 4308

| | |
|---|---|
| Jay Brodsky | Case No. _____ |
| | *(to be filled in by the Clerk's Office)* |
| **Plaintiff(s)** | |
| *(Write the full name of each plaintiff who is filing this complaint.* | Jury Trial: *(check one)*  ☑ Yes  ☐ No |
| *If the names of all the plaintiffs cannot fit in the space above,* | |
| *please write "see attached" in the space and attach an additional* | |
| *page with the full list of names.)* | |
| -v- | |
| HiLine Coffee Company, Inc. | |
| Eugene Kakulin | |
| Ted Snyder | |
| Does' 1 through 5 et al | |
| **Defendant(s)** | |
| *(Write the full name of each defendant who is being sued.  If the* | |
| *names of all the defendants cannot fit in the space above, please* | |
| *write "see attached" in the space and attach an additional page* | |
| *with the full list of names.)* | |

# COMPLAINT FOR A CIVIL CASE

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Jay Brodsky |
| Street Address | 240 East Shore Road, #444 |
| City and County | Great Neck       Nassau County |
| State and Zip Code | New York       11023 |
| Telephone Number | (973) 568-1666 |
| E-mail Address | demcointerexport@yahoo.com |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

| | |
|---|---|
| Name | HiLine Coffee Company, Inc. |
| Job or Title *(if known)* | |
| Street Address | 1133 Broadway, Suite 706 |
| City and County | New York     New York County |
| State and Zip Code | New York     10010 |
| Telephone Number | |
| E-mail Address *(if known)* | Hi@hilinecoffee.com |

Defendant No. 2

| | |
|---|---|
| Name | Gene Kakaulin |
| Job or Title *(if known)* | CEO |
| Street Address | 1133 Broadway, Suite 706 |
| City and County | New York     New York County |
| State and Zip Code | New York     10010 |
| Telephone Number | |
| E-mail Address *(if known)* | Hi@hilinecoffee.com |

Defendant No. 3

| | |
|---|---|
| Name | Ted Snyder |
| Job or Title *(if known)* | COO |
| Street Address | 1133 Broadway, Suite 706 |
| City and County | New York     New York County |
| State and Zip Code | New York     10010 |
| Telephone Number | |
| E-mail Address *(if known)* | Hi@hilinecoffee.com |

Defendant No. 4

| | |
|---|---|
| Name | Does' 1 through 5 et al |
| Job or Title *(if known)* | |
| Street Address | unknown |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☑ Federal question                    ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Telephone Consumer Protection Act 1991(TCPA)
47 U.S.C.A. § 227 et seq.,
Sections 5(a), 5(m)(1)(A), and 16(a) of the FTC Act
15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b)
Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act")

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff,  *(name)* _____ , is a citizen of the State of *(name)* _____ .

b.    If the plaintiff is a corporation

The plaintiff,  *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ ,

and has its principal place of business in the State of *(name)* _____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant,  *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____

    b.    If the defendant is a corporation

        The defendant, *(name)* _____ , is incorporated under

        the laws of the State of *(name)* _____ , and has its

        principal place of business in the State of *(name)* _____ .

        Or is incorporated under the laws of *(foreign nation)* _____ ,

        and has its principal place of business in *(name)* _____ .

        *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

    The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

      75,001.00+

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

    See attached complaint

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

    see attached complaint

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        May 6, 2019

Signature of Plaintiff

Printed Name of Plaintiff        Jay Brodsky

### B.   For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

Case No.                    Brodsky v. HiLine                    Page 1 of 26
May 5, 2019                 SUMMONS & COMPLAINT

Jay Brodsky
240 East Shore Road, #444
Great Neck, NY 11023
Telephone: (973) 568-1666
E-mail: demcointerexport@yahoo.com
Plaintiff ProSe on Behalf of Himself          Case No._____

## UNITED STATE DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

THE MATTER OF:

JAY BRODSKY
**PLAINTIFF**
                            -against-

                                              **Issues Before the Court:**
                                              Telephone Consumer
                                              Protection Act 1991(TCPA)
                                              47 U.S.C.A. § 227 et seq.,
                                              Sections 5(a), 5(m)(1)(A),
                                              and 16(a) of the FTC Act
                                              15 U.S.C. §§ 45(a), 45(m)(1)
                                              (A), 53(b)
HILINE COFFEE COMPANY, INC.                   Section 6 of the
EUGENE KAKULIN, CEO                           Telemarketing and Consumer
TED SNYDER, COO                               Fraud and Abuse Prevention
DOES 1-5 et al                                Act ("Telemarketing Act")
**DEFENDANT'S**                               15 U.S.C. § 6105

## SUMMONS AND COMPLAINT

## I.        __INTRODUCTION__

1.    On this 5th day of May, 2019, Jay Brodsky, hereafter known as,

   'PLAINTIFF,' resides at 240 East Shore Road, Apartment 444, Great Neck,

   New York 11023, duly deposes that the facts as stated herein are true to the

   best of his knowledge.

## II.       __VENUE AND JURISDICTION:__

2.    Venue is appropriate under 28 U.S.C.A. § 1332 because, *inter alia*: Plaintiff,

   JAY BRODSKY is permanently domiciled in New York State, County of

   Nassau; 'HILINE COFFEE COMPANY, INC.,' hereafter known as,

   'HILINE,' a Delaware Corporation number [4447155]; DOES' 1 through 5,

   include officers, directors, employees' and shareholders of, 'HILINE,'

   directs its business activities to residents of New York State, County of

   Nassau and to others similarly situated nationwide, from their headquarters

   at, '1133 Broadway, Suite 706, New York, New York 10010;' also operating

   a commercial coffee sales website known as, www.hilinecoffee.com

3.    This Court has jurisdiction over the parties because, 'HILINE' and DOES' 1

   through 5,  conducts a major part of its national operations from its

headquarters located at, New York, New York, with an advertising budget

not exceeded in other jurisdictions throughout the United States.

13.     The Court has Federal question jurisdiction over the TCPA claims. Mims v.

        Arrow Fin. Servs., LLC, 132 S. Ct. 740 (2012).

14.     The venue is proper because one or more of the Defendants conducts

        business from its offices at, New York, New York and 'HILINE,' is a

        registered, Delaware Corporation, thereby subjecting it to this Courts'

        jurisdiction.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the

        wrongful conduct giving rise to this case occurred in and was directed to

        and/or emanated from this District.

### III.              __INTRODUCTION__

16.     Plaintiff brings this putative action against 'HILINE' to secure redress

        for violations of the, Telephone Consumer Protection Act, 47 U.S.C. § 227

        ('TCPA').

17.     Plaintiff is one of many phone call recipients, believed to number in the

        thousands, who received illegal telemarketing 'TEXT MESSAGES' from,

        'HILINE.'

18.     Plaintiff brings this action to enforce the consumer privacy provisions of the

TCPA and achieve redress and compensation for himself as a consumer. In a

case such as this, where individual damages are set by statute at $500-$1,500

per violation, the inclusion of punitive damages are best if not the only

means of obtaining redress for the type of wide-scale, illegal telemarketing

practices at issue, and is consistent with the private right of action afforded

to Plaintiff.

19.     In this case however, the 'HILINE' routinely used an, 'Automated Text

Messaging System' (ATMS), that directed SMS messages to Plaintiff on

multiple occasions by its agents and/or employees' in consonance to the,

'TCPA.'

20.     EUGENE KAKULIN, TED SNYDER and DOES' 1 through 5, are officers,

employees', directors' and shareholders of, 'HILINE,' who are thereby

personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C.

§ 217 of the Telephone Consumer Protection Act, which states;

>               'The act, omission, or failure of any officer, agent,
> or other person acting for or employed by any common
> carrier or user, acting within the scope of his
> employment, shall in every case be also deemed to be the
> act, omission, or failure of such carrier or user as well as
> of that person, 47 U.S.C. § 217' (emphasis added).

SUMMONS & COMPLAINT

Texas v. American Blastfax, Inc., 164 F.Supp.2d 892, 899 (W.D. Tex. 2001)

("American Blastfax"); Sandusky Wellness Center, LLC v. Wagner

Wellness, Inc., 2014 WL 1333472, at * 3 (N.D. Ohio March 28, 2014);

Maryland v. Universal Elections, 787 F.Supp.2d 408, 415-16 (D.Md. 2011)

("Universal Elections"); Baltimore-Washington Tel Co. v. Hot Leads Co.,

584 F.Supp.2d 736, 745 (D.Md. 2008); Covington & Burling v. Int'l Mktg.

& Research, Inc., 2003 WL 21384825, at *6 (D.C.Super Apr. 17, 2003);

Chapman v. Wagener Equities, Inc. 2014 WL 540250, at *16-17 (N.D.Ill.

Feb. 11, 2014); Versteeg v. Bennett, Deloney & Noyes, P.C., 775 F.Supp.2d

1316, 1321 (D.Wy.2011) ("Versteeg")

## III.          THE PARTIES

**PLAINTIFF:**

21.   JAY BRODSKY, 240 East Shore Road, Apt. 444, Great Neck, New York

11023;

**DEFENDANTS:**

22.   HILINE COFFEE COMPANY, INC., 1133 Broadway, Suite 706, New York,

New York 10010; registered Delaware Corporation;

23.   GENE KAKAULIN, Chief Executive Officer, 1133 Broadway, Suite 706,

New York, New York 10010,

24.   TED SNYDER, Chief Operating Officer, 1133 Broadway, Suite 706, New

York, New York 10010,

25.   DOES' 1 THROUGH 5 - Plaintiff is presently unable to confirm which of

'HILINEs' wholly owned subsidiaries and/or affiliated companies; DOES'

1 through 5 are liable for the claims asserted herein. Discovery will allow

Plaintiff to proceed with naming additional, 'HILINE,' affiliated and

owned companies. Other persons identities included in DOES' 1 through 5,

whose identities are unknown to Plaintiff participated in the events alleged

herein which give rise to the claims asserted by Plaintiff.

26.   At all times material to this complaint, 'GENE KAKAULIN,' Chief

Executive Officer (CEO) and 'TED SNYDER,' Chief Operating Officer

(COO), are known to have controlled in fact, and believed to be

contemporaneously 'CONTROLLING DIRECTORs,' of 'HILINE,' and

as so, personally direct the telemarketing practices at issue.

27.   At all times material to this complaint, 'HILINE,' conducted its daily

business operations from, NEW YORK, NEW YORK, using the same

equipment and same employees', and held themselves out to the public

under the business name, "HILINE COFFEE COMPANY, INC."

## IV.  THE TELEPHONE CONSUMER PROTECTION ACT

28.  In 1991, Congress enacted the, "TCPA" to regulate the explosive growth of

the telemarketing industry which today is believed to have put forth nearly,

SIXTY BILLION (60,000,000,000) illegal telemarketing calls and text

(SMS) messages (according to [F]TC statistics) to consumers over the past

few years and that number is expected to grow exponentially over the next

few years if something isn't done to stop the offenders from continuing these

illegal telemarketing practices. In so doing, Congress recognized that

"unrestricted telemarketing . . . can be an intrusive invasion of privacy with

5-10% of those illegal calls and texts (SMS) resulting in recipients being

defrauded out of Thousands of Dollars each, thereby making these calls

costly and dangerous to the well being of mostly senior citizens who are

more vulnerable to these types of text messages.  The "Telephone Consumer

Protection Act of 1991," Pub. L. No. 102-243, 105 Stat. 2394 (1991),

codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the

Communications Act of 1934, 47 U.S.C. § 201 et seq.

29.    The TCPA's most severe restrictions address telemarketing text messages put

forth to cellular telephone lines. In enacting the statute, Congress stated that

banning these text messages is 'the only effective means of protecting

telephone consumers from this nuisance and privacy invasion.' Id. § 2(10)

and (12); see also Mims, 132 S. Ct. at 745.

30.    Accordingly, the TCPA prohibits persons/companies from initiating

telemarketing calls and/or texts (SMS) to residential telephone lines and cell

phones using automated messaging or by using an, "Automatic Text

Messaging System," commonly referred to as, "ATMS," to call or deliver

text messages without the prior express consent of the called party pursuant

to, 47 U.S.C. § 227(b).

.................................................................................
By **TRACEY KAPLAN** | tkaplan@bayareanewsgroup.com | Bay Area News Group
PUBLISHED: July 8, 2018 at 9:00 am | UPDATED: July 10, 2018 at 5:25 am

They boldly prey on the elderly and other vulnerable groups like immigrants and
small businesses by impersonating a variety of agencies, from the IRS to
student-loan collectors. In the latest shakedown, immigrants in New York City
reported being swindled out of millions of dollars by Mandarin-speaking
scammers pretending to be from the Chinese consulate and demanding money
to protect victims' U.S. legal status.
.................................................................................

31.    For automated text messaging made to cellular telephones prior to

October 16, 2013, the telemarketer must show they had a consumer's prior

expressed written consent to call via pre-recorded or text (SMS) via an

automated text messaging system. Satterfield v. Simon & Schuster, Inc., 569

F.3d 946, 955 (9th Cir. 2009) ("Satterfield")). "Prior express consent is an

affirmative defense for which the defendant bears the burden of proof." See

Grant v. Capital Management Services, L.P., 2011 WL 3874877, at *1, n.1.

(9th Cir. Sept. 2, 2011); see also Robbins v. Coca-Cola Company, No. 13-

cv-132, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013).

32.   For autodialed telemarketing calls or auto-texted messages made to cellular

telephones on or after October 16, 2013, telemarketers must show prior

expressed written consent (a) bearing the signature of the person who is/was

being dialed and thereby providing consent; (b) written consent must specify

the telephone number to which the person consenting is to be called; (c) it

must show clearly that it authorizes the company to call the person being

dialed by use of an autodialer, prerecorded message or auto-text for

telemarketing purposes; and (d) providing consent is not a condition of

purchasing goods or services. See In re Rules & Regs.

## V.   <u>IMPLEMENTING THE TCPA, 27 FCC Rcd 1830, 1844 ¶ 33 (2012)</u>

33.   For calls dialed on or after October 16, 2013, having an established business

relationship exemption is no longer applicable.

34.   On May 9, 2013, the [F]CC released a Declaratory Ruling holding that a,

Corporation, or other entity that contracts out its telephone marketing, "May

be held vicariously liable under federal common law principles of agency for

violations of . . . section 227(b) . . . that are committed by third-party

telemarketers."

35.   More specifically, the [F]CC, 2013 Ruling held that, even in the absence of

evidence of a formal contractual relationship between the vendor/seller and

the telemarketer, a vendor/seller is liable for telemarketing calls and text

messages if the telemarketer "has apparent (if not actual) authority" to make

the calls or send advertising texts. [F]CC, 2013 Ruling, 28 [F]CC Rcd at

6586 ¶ 34.

36.   The [F]CC has rejected a narrow view of TCPA liability, including the

assertion that a vendor/seller's liability requires a finding of formal agency

and immediate direction and control over the third-party who placed the

telemarketing call or advertising text (SMS).

37.     Under the TCPA, a vendor/seller of a product or service may vicariously be

liable for a third-party telemarketer's violations of, Section 227(b), even if

the vendor/seller did not physically dial the illegal call or send the text

message, and even if the vendor/seller did not directly control the

telemarketer who did.

(a)     In re Rules and Regulations Implementing the Telephone Consumer

Protection Act, Declaratory Ruling on Motion by ACA International for

Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); Birchmeier v.

Caribbean Cruise Line, Inc., 2012 WL 7062748 (Dec. 31, 2012).

38.     A vendor/seller is liable under, Section 227(b) when it has authorized a

telemarketer to market its goods or services.

39.     Additionally, a vendor/seller may be vicariously be liable for a Section

227(b) violation under principles of apparent authority and ratification.

---

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling
Concerning the TCPA Rules, CG Docket No. 11-50, 28 FCC Rcd 6574, 6574 ¶ 1
(2013) ("FCC 2013 Ruling").*

---

40.     The [F]CC 2013 Ruling further clarifies the circumstances under which a

telemarketer has apparent authority:

Apparent authority may be supported by evidence that
the vendor/seller allows the outside sales entity access to
information and systems that normally would be within
the vendor/seller's exclusive control, including: access to
detailed information regarding the nature and pricing of
the seller's products and services or to the seller's
customer information. The ability by the outside sales
entity or debt collector to enter consumer information
into the vendor/seller's sales or customer systems, as well
as the authority to use the vendor/seller's trade name,
trademark and service mark may also be relevant. It may
also be persuasive that the vendor/seller approved, wrote
or reviewed the outside entity's telemarketing or
collection scripts. Finally, a vendor/seller would be
responsible under the TCPA for the unauthorized conduct
of a third-party telemarketer/collection agent that is
otherwise authorized to market/collect a debt on the
vendor/seller's behalf if the vendor/seller knew (or
reasonably should have known) that the telemarketer/
collection agent was violating the TCPA on the vendor/
seller's behalf and the vendor/seller failed to take
effective steps within its power to force the telemarketer/
collection agent to cease that conduct.

............................................................................

41.   The [F]CC, 2013 Ruling, further held that, even in the absence of evidence

of a formal contractual relationship between the vendor/seller and the

telemarketer, a vendor/seller is liable for telemarketing calls and texts if the

telemarketer, 'Has apparent (if not actual) authority' to make the calls.

## VI.        FACTS & STANDING
### The Illegal Telemarketing Campaign at Issue

42.    Plaintiff has standing to bring this suit on behalf of himself under Article III

of the United States Constitution because Plaintiffs' claims state: (a) a valid

injury in fact; (b) an injury which is traceable to the conduct of Defendants;

and (c) is likely to be redressed by a favorable judicial decision. See Spokeo

v. Robins, 578 U.S. __ (2016) at 6; Lujan v. Defenders of Wildlife, 504

U.S. 555, 560 (1992).

43.    Plaintiff may bring a class action on behalf of himself and all others

similarly situated, as a member of a proposed class (hereafter 'The Class')

defined as follows:

> "All persons within the United States who received any
> telephone call from Defendant or Defendant's agent/s and/or
> employee/s to said person's cellular telephone made through the
> use of any automatic telephone dialing system within the four
> years prior to the filing of this Complaint wherein said person
> had not previously consented to receive any such calls."



44.    At all times relevant to this Complaint, GENE KAKAULIN, Chief

Executive Officer (CEO) and TED SNYDER, Chief Operating Officer

(COO), authorized 'HILINE,' to solicit prospective customers to purchase

their brand of coffee in lieu of '[1]NESPRESSO,' a widely recognized coffee

brand owned by '[2]NESTLE, S.A.'  Plaintiff owns several 'NESPRESSO'

branded coffee machines thereby engendering himself as a prospective

customer to purchase 'HILINEs' products.

---

[1] **Nestlé Nespresso S.A.**, trading as **Nespresso**, is an operating unit of the Nestlé Group, based in Lausanne, Switzerland.[3] Nespresso machines brew espresso and coffee from coffee capsules, or *pods* in machines for home or professional use,[4] a type of pre-apportioned single-use container of ground coffee beans, sometimes with added flavorings.

[2] **Nestlé S.A.** (/ˈnɛsleɪ, -li, -əl/, formerly /-əlz/; French: [nɛsle]) is a Swiss multinational food and drink company headquartered in Vevey, Vaud, Switzerland. It is the largest food company in the world, measured by revenues and other metrics, since 2014

45. The trademarks and trade-names of 'HILINE,' are widely known due to an extravagant internet, email and telemarketing campaign.

46. 'HILINE,' contacted the plaintiff via text message on multiple occasions to solicit the purchase of replacement 'NESPRESSO' coffee capsules. (a) The phone numbers texted, (973) 568-1666 or (973) 568-3424 (phone numbers that have belonged to Plaintiff for more than ten (10) years) are both registered on the [F]CCs' Do-Not-Call Registry;

47. On Monday, January 21, 2019, at 12:23PM, Plaintiff received a text (SMS) advertisement message from, 'HILINE,' announcing a 10% storewide sale. On Tuesday, January 28, 2019 at 10:36AM, Plaintiff received a text (SMS) advertisement offering a free travel coffee mug with purchase of 'NESPRESSO' replacement coffee capsules.

48. At all times relevant to this lawsuit, 'HILINE' had the ability to supervise, monitor, and control the conduct of its telemarketing agents, but instead consciously turned a "blind eye" to their illegal conduct, while accepting the benefits of those illegal acts.

49. At all times relevant to this lawsuit, 'HILINE' had the authority to issue a "CEASE & DESIST," order to its sales agents and subsidiaries to revoke their ability to harass Plaintiff using, 'HILINEs' widely recognized name.

50. At all times relevant to this lawsuit, 'HILINE' had the authority to issue a "CEASE & DESIST," order to its telemarketers thereby revoking their authority to harass the Plaintiff on, "HILINE's" behalf.

51. At no time did 'HILINE' issue such a "CEASE & DESIST," order to its agents or subsidiaries.

52. At all times relevant to this lawsuit, 'HILINE' allowed its agents and subsidiaries too telemarket using its trade names when texting (SMS) Plaintiff.

53. By allowing 'HILINE,' its telemarketers and subsidiaries to telemarket, using the, 'HILINE,' trade name, and by allowing, telemarketers to use its trademarks, 'HILINE' intentionally led consumers to believe that its agents and subsidiaries had the authority to act on, 'HILINEs' behalf.

## VII.        __INJURY IN FACT__

54. Plaintiff has standing to bring this suit on behalf of himself under Article III of the United States Constitution because Plaintiffs' claim states:

(a) a valid injury in fact; (b) an injury which is traceable to the conduct of

Defendant; and (c) is likely to be redressed by a favorable judicial decision.

See Spokeo v. Robins, 578 U.S. __ (2016) at 6; Robins v. Spokeo, 867 F.3d

1108 (9th Cir. 2017) (cert denied. 2018 WL 491554, U.S., Jan. 22 2018);

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); and Chen v.

Allstate Inc. Co., 819 F.3d 1136 (9th Cir. 2016).

55.    Plaintiffs' injuries must be both 'concrete' and 'particularized' in order to

satisfy the requirements of Article III of the Constitution. (Id.)

56.    For an injury to be concrete it must be a de facto injury, meaning it actually

exists.  In this case, the Plaintiff took the affirmative step of enrolling

himself on the National Do-Not-Call Registry for the purpose of preventing

telemarketing calls and text messages to his telephone. Such telemarketing

texts are a nuisance, an invasion of privacy, and an expense to Plaintiffs. See

Soppet v. enhanced Recovery Co., LLC, 679 F.3d 637, 638 (7th Cir. 2012).

All three of these injuries are present in this case. (See also Chen v. Allstate

Inc. Co., 819 F.3d 1136 (9th Cir. 2016).)

57.    Furthermore, the Third Circuit recently stated, Congress found that

"[u]nsolicited telemarketing phone calls or text messages, by their nature,

invade the privacy and disturb the solitude of their recipients," Van Patten,

847 F.3d at 1043, and sought to protect the same interests implicated in the

traditional common law cause of action. Put differently, Congress was not

inventing a new theory of injury when it enacted the TCPA. Rather, it

elevated a harm that, while "previously inadequate in law," was of the same

character that previously existed "legally cognizable injuries." Spokeo, 136

S.Ct. at 1549. Spokeo addressed, and approved, such a choice by Congress.

Susinno v. Work Out World Inc., No. 16-3277, 2017 WL 2925432, at *4 (3d

Cir. July 10, 2017).

58.    For an injury to be particularized means that the injury must affect the

Plaintiffs in a personal and individual way. See Spokeo at 7. Furthermore,

Plaintiffs are persons who pay for the phone, and are the regular carrier and

user of the phone. All of these injuries are particular to the Plaintiff.

## VIII.    THE MASSIVE SCOPE OF ILLEGAL TELEMARKETING AT ISSUE

59.    The scope of the illegal telemarketing practices at issue in this case are

confirmed by records contained with the Federal Trade Commission's

Do Not Call Registry Database and by past class action litigations

addressing these same issues:

**Jay Brodsky registration information FTC Do-Not-Call Directory:**
(a) Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in **3424** on **October 08, 2017**. Most telemarketers will be required to stop calling you 31 days from your registration date.
(b) Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in **1666** on **October 08, 2017**. Most telemarketers will be required to stop calling you 31 days from your registration date.

60.   47 U.S.C. § 227(c) states that any, "Person who has received more than one telephone call or text (SMS) message within any 12-month period by or on behalf of the same entity in violation of the regulations proscribed under this subsection may" bring a private action based on a violation of said regulations, which were enacted to protect telephone subscribers' privacy rights to avoid receiving telephone or text messaging solicitations to which they object.

61.   The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that, '[n]o person or entity shall initiate any telephone solicitation' to '[a] residential or business telephone subscriber who has registered his or her telephone number on the National do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal government.' See 47 C.F.R. § 64.1200(c).

62.     47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) are

applicable to any person or entity making telephone solicitations,

telemarketing calls or text messages to wireless telephone numbers to the

extent described in the Commission's Report and Order, CG Docket No.

02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone

Consumer Protection Act of 1991,' which the Report and Order, in turn,

provides as follows:  The Commission's rules provide that companies

making telephone solicitations to residential telephone subscribers must

comply with time of day restrictions and must institute procedures for

maintaining do-not-call lists. For the reasons described above, we conclude

that these rules apply to calls made to wireless telephone numbers. We

believe that wireless subscribers should be afforded the same protections as

wireline subscribers.

63.     Plaintiff at <u>NO</u> time gave 'HILINE,' 'Prior Express Consent' to autodial

and/or deliver Pre-Recorded telemarketing calls or text messages to solicit

Plaintiff to purchase their consumer products.

64.     In June of 2016, the United States District Court for the Northern District of

West Virginia under the 'TCPA' denied a motion to dismiss filed by 'Got

Warranty Inc.' as well as co-defendants NCWC and Palmer Administrative

Services.  The defendants filed a motion to dismiss the 'TCPA' class action

on the ground that the plaintiffs' did not suffer concrete harm by receiving

telephone calls from the defendants who implemented the use of an

'Automatic Telephone Dialing System' (ATDS) to the plaintiffs cellular

telephones.  The court relied on *Spokeo v. Robbins,* found to the contrary,

expressly holding that, 'unwanted phone calls cause concrete harm.'  The

court also found 'intangible harm' caused by telephone calls that violate

'TCPA,' such as 'invasion of privacy,' wasting a consumers time or causing

risk of injury due to interruption of concentration while driving.  In addition

the drainage of a cellphone battery and the cost for electricity to charge the

battery is concrete material harm.  Therefore, a claim of this magnitude

deserves to be heard in court.

65.   A formal request to the Federal Trade Commission has been put forth by

Plaintiff for telephone records and complaint records pertaining to present

and/or past inquiries by consumers against, 'HILINE,' for violations of

'TCPA.'

## IX.       __THE LEGAL BASIS OF THE CLAIMS__

66.   Plaintiffs' claim arises pursuant to the provisions of the TCPA, a Federal

Statute enacted to prohibit unreasonable invasions of privacy via certain

telemarketing practices.

67.   There are questions of law and fact common to those associated with

Plaintiff, including but not limited to the following:

(a.)   Whether, 'HILINE' violated the TCPA by
engaging in the act of making unsolicited
autodialed auto-texted to cell telephone lines?

(b.)   Whether, 'HILINE' and their associates illegally
telemarked to consumers throughout the United
States?

(c.)   Whether, unsolicited ATMS advertising text
messages were effectuated on behalf of 'HILINE?'

(d.)   Whether, Plaintiff is entitled to statutory and
punitive damages as a result of 'HILINEs' illegal
actions?

(e.)   Whether an agency relationship existed between,
DOES' 1 through 5 and 'HILINE'?

(f.)    Whether, 'HILINE,' had the ability to control the

telemarketing practices of its agents and

subsidiaries?

(g.)    Whether, 'HILINE,' provided its agents with

apparent authority to telemarket on its behalf?

and

(h.)    Whether EUGENE KAKULIN, TED SNYDER

and DOES' 1 through 5, ratified, 'HILINE's,'

illegal actions?

## X.          COUNT ONE
### VIOLATION OF THE TCPA: 47 U.S.C. § 227(b):
### PRE-RECORDED MESSAGES

68.    The Plaintiff re-alleges and incorporates the foregoing allegations contained

in, 1 through 67, as set forth fully in this Complaint.

69.    The TCPA makes it unlawful to initiate any telephone call, to any residential

or cell phone telephone line, using an ATDS, artificial or prerecorded voice

or to deliver any telemarketing, text message, advertisement or solicitation

of any kind without prior expressed written consent of the called party being

dialed.

70. Plaintiff alleges that 'HILINE' jointly engaged in an illegal telemarketing scheme, thereby violating of the provisions set forth within the TCPAs' prohibition against telemarketing using an ATDS or ATMS.

71. Plaintiff alleges that such violations of the TCPA were both willful and negligent.

72. As a result of 'HILINEs' willful actions, Plaintiff is hereby entitled to having his rights, status, and legal relations upheld relating to 'HILINEs' use of tele-marketing via ATDS or ATMS determined under the TCPA through these actions.

## XI.      COUNT TWO
## INJUNCTIVE RELIEF TO BAR FUTURE TCPA VIOLATIONS

73. The Plaintiff re-alleges and incorporates the foregoing allegations as set forth within, 1 through 72, of this Complaint.

74. The TCPA expressly authorizes the Court to issue injunctive relief against 'HILINE' to prevent further violations of the TCPA from being inflicted upon Plaintiff.

75. Plaintiff, respectfully petitions the Court to order 'HILINE,' including but not limited to its employees, agents, or other affiliates to immediately CEASE & DESIST, from engaging in any further unsolicited tele-marketing

text messages' (SMS) directed to Plaintiff and others similarly situated to

prevent further violations of the, TCPA.

76.    WHEREFORE, Plaintiff, respectfully requests of the Court to enter a

judgment for each count in his favor, thereby providing the following relief:

   (a)   As to 'COUNT ONE,' statutory damages of $500

         per violation, or up to $1,500 per violation if

         proven to be willful; and punitive damages as the

         Court sees' fit;

   (b)   As to 'COUNT TWO,' a permanent injunction

         prohibiting 'HILINE,' including but not limited to,

         its employees, agents, or other affiliates, to

         immediately CEASE from engaging in any further

         text messaging advertising campaign directed to

         Plaintiff in violation of the TCPA;

   (c)   Any other punitive relief the Court finds just and

         proper.

   (d)   All other and further relief as the Court deems

         necessary, just, and proper.


Signed, May 5, 2019 at Great Neck, New York;


_____

Jay Brodsky, on behalf of himself, ProSe

SUMMONS & COMPLAINT

Case No.                          Brodsky v. HiLine                    Page 26 of 26
May 5, 2019                     SUMMONS & COMPLAINT

SUMMONS & COMPLAINT



RECEIVED
SDNY PRO SE OFFICE
2019 MAY 10 PM 1: 53
S.D. OF N.Y.

| | |
|---|---|
| **1** | US POSTAGE & FEES PAID<br>4 OZ FIRST-CLASS MAIL FLATS RATE<br>RETAIL |  062S0010207814<br>FROM 11023 |

stamps
endicia
05/06/2019

## USPS FIRST CLASS MAIL®

Jay Brodsky
240 East Shore Road
Apt. 444
Great Neck NY 11023

C014

SHIP  United States District Court
TO:   Southern District of New York
      Clerks Office-New Intake
      500 Pearl Street
      New York NY 10007-1316



### NEW CASE INTAKE

Pro se
BK



RECEIVED
MAY 09 2019
CLERK'S OFFICE